RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE __11 / 1 / 11__

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

MICHAEL ADAM SMITH,                 CIVIL ACTION
     Appellant                     1:10-CV-01911

VERSUS

U.S. COMMISSIONER OF SOCIAL         JUDGE DEE D. DRELL
SECURITY,                           MAGISTRATE JUDGE JAMES D. KIRK
     Appellee


<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Michael Adam Smith ("Smith") filed an application for disability insurance benefits ("DIB") on September 26, 2008, alleging a disability onset date of September 28, 2000 (Tr. p. 47) due to ruptured discs, bone spurs, and back injuries (Tr. p. 67). That application was denied by the Social Security Administration ("SSA") (Tr. p. 36).

A de novo hearing was held before an administrative law judge ("ALJ") on April 29, 2010, at which Smith appeared with his attorney and a vocational expert ("VE") (Tr. p. 307). The ALJ found that, although Smith suffers from severe impairments of degenerative disc disease of the lumbar spine, cervicalgia and obesity, he was able to perform the full range of sedentary work as of December 31, 2009 (the date he was last insured for DIB) and Rule 201.24 of the Medical-Vocational Guidelines directed a finding of "not disabled" (Tr. pp. 18-22).

Smith requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4) and the ALJ's

decision became the final decision of the Commissioner of Social Security ("SSA").

Smith next filed this appeal for judicial review of the Commissioner's final decision.  Smith raises ths following issues for appellate review:

> 1. The ALJ's error in finding that Smith's insured status expired in 2009 influenced his view as to which evidence was relevant to the adjudication of the claim, and resulted in prejudice to the claimant.  Remand is required for the ALJ to consider all of the evidence.
>
> 2. The ALJ failed to discuss why he did not find Smith meets the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.
>
> 3. Reliance on the Medical-Vocational Guidelines was inappropriate in view of the uncontradicted non-exertional impairments assessed by the agency physicians, and the error is not harmless because the vocational expert testimony does not carry the Commissioner's burden of proof at the final step in the sequential evaluation process.
>
> 4. The Appeals Council erred in declining to remand for consideration of the assessment of restrictions by the treating physician without providing good reasons to reject his opinion as required by 20 C.F.R. Section 404.1527(d), and the opinion was improperly rejected without good cause.

The Commissioner filed a reply brief (Doc. 12), to which Smith responded (Doc. 13).  Smith's appeal is now before the court for disposition.

<u>Eligibility for DIB</u>

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, a

plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. 423 (d)(1)(A).   Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. 423(d)(2).

Summary of Pertinent Facts

1. Medical Records

On April 16, 2007, Dr. I.C. Turnley, Jr., a general practice doctor, wrote that Smith's back problems began around 2001 or 2002 due to more than one back injury at work (Tr. p. 138).   Dr. Turnley stated that Smith's main complaint was related to his back and known disc problems, and noted that Smith usually weighed 270 pounds to 307 pounds (Tr. p. 138).   Smith was in a moving vehicle accident was on December 14, 2005, which resulted in persistent muscle spasms and back pain with persistent right side sciatica; Smith claimed that no pain medication gave him any significant relief (Tr. p. 138).[1]   Dr. Turnley stated that Smith's pain medication had to be monitored carefully because he tends to take more than usual, so he was prescribed narcotic analgesic very sparingly (Tr. p. 138).   Dr. Turnley stated that Smith's low back pain (L4-5 area) and other back pain continued and his muscle spasms were worse after any activity (Tr. p. 138).   Dr. Turnley

---

[1] Smith's treatments in 2006 included Ultram, Soma, Phenergan with codeine, Vicodin, and Indocin, as well as persistent recommendations to lose weight (Tr. pp. 170-171).

3

stated that Smith's complaints of pain did not match the medical findings and that he had a tendency to exaggerate, although there was some pain present and muscle spasm medication did not help significantly (Tr. p. 138).  Dr. Turnley explained that Smith has had all the usual back pain treatments but refused to even try to lose weight, and his obesity was one of the most important factors in his back problems (Tr. p. 138).  Dr. Turnley believed Smith wanted to rely on pain medication (Tr. p. 139).

On December 14, 2007, Smith was treated in the emergency room for low back pain and leg pain caused by a moving vehicle accident (Tr. pp. 114-116).  X-rays of Smith's lumbar spine showed some narrowing at L5-S1 with facet joint hypertrophy, which were believed to be degenerative changes (Tr. p. 117).  Smith was diagnosed with a lumbar sprain/strain and contusion (Tr. p. 116).

Smith returned to the emergency room on January 20, 2007, complaining of chronic low back pain exacerbated by an upright position and movement; Lortab was prescribed (Tr. p. 121-123).  An MRI of the lumbar spine showed a small midline disc extrusion at L5-S1 and minimal broad based disc protrusion at L4-5 (Tr. p. 136).  It was noted that, although the thecal sac was compromised by at least 25%, it would only be questionably associated with radicular type symptomatology and there were no signs of spinal stenosis (Tr. p. 136).

On February 9, 2007, Smith was treated at the LSU Health Sciences Center for chronic back pain for one month and prescribed Lortab (20-5/500mg tablets) and Motrin (30-800 mg tablets) (Tr. pp.

4

226-229).  Smith returned on February 13, 2007 for back pain and was prescribed Ultram (30-50 mg tablets) (Tr. pp. 222-225).  Smith returned again on February 18, 2007 and was prescribed Lortab (20-10/500 mg tablets), Carisoprodol (30-350 mg tablets), and Tramadol (30-50 mg tablets), and given a Decadron injection (Tr. pp. 218-221).  When Smith returned on February 23, 2007, he was given a Demerol injection and prescribed Lortab (15-10 mg tablets) and Soma, and told to contact a pain management clinic because the ER was not authorized to manage chronic pain (Tr. pp. 214-217).

On February 22, 2007, at the emergency room of LaSalle General Hospital, Smith complained of severe low back pain which radiated to both legs; he reported a slip and fall one month before as well as the moving vehicle accident (Tr. p. 118).  Smith was diagnosed with acute myofascial strain causing acute chronic low back pain (Tr. p. 120).  Smith was noted to be taking Lortab, Soma, and Ultram, and was additionally prescribed Decadron (Tr. pp. 118-119).

In March 2007, Smith complained of numbness in both legs as well as back and leg pain and stated he was not taking any medication (Tr. p. 126).  Smith was prescribed Ultram (Tr. p. 129).

Smith returned to the LSU Health Sciences Center on May 28, 2007, with complaints of back pain; an MRI showed a herniated lumbar disc, and Smith was prescribed Lortab (18-7.5 mg tablets) and Flexeril (25-10 mg tablets) (Tr. pp. 209-213).  On June 15, 2007, Smith returned and was prescribed Ultram (20-50 mg tablets) (Tr. pp. 205-208).

In January 2008, an MRI (requested by Dr. Turnley) showed

5

facet hypertrophy at three levels and central canal narrowing; he was given facet injections and prescribed vicodin and soma (Tr. pp. 144, 172-173). Later in January, Smith continued to have tender back muscles and spasms (Tr. p. 138). Smith was referred to a pain management group before further treatment would be administered due to his increasing need for narcotic analgesics (Tr. p. 138).

Smith began seeing Dr. Michael Dole, a physical medicine and rehabilitation doctor, for pain management in March 2008 (Tr. p. 167). Dr. Dole noted Smith was then 29 years old, had prior back surgery in 2002 and had injured his back again in a motor vehicle accident in December 2007, which increased his back pain and caused pain in both legs (Tr. p. 167). Dr. Dole noted that Smith had been taking Ultram and Soma successfully, but since the 2007 accident he was taking Vicodin 7.5 mg., which Smith reported decreased his pain by about thirty percent and lasted about three ours; a 10 mg. dose lasted four hours (Tr. p. 167). Smith reported his pain is an aching, stabbing low back pain (7-8 on a scale of 10) with numbness going into both thighs and feet (Tr. p. 167). A January 2008 MRI showed disc protrusion at L4/5, prior laminectomy, moderate central stenosis at L5/S1, and broad-based disc protrusion extending to the right and left neuroforamen with mild bilateral neuroforaminal stenosis (Tr. p. 167). Dr. Dole noted that Smith had not tried a Medrol Dosepak, physical therapy, or selected nerve root blocks, and that his pain was worse with activity and better with rest. On physical examination, Dr. Dole found Smith was 6'3" tall and weighed 280 pounds, the muscle tone, bulk and ranges of motion in

his extremities were normal, he had moderate tenderness to palpation of the lower lumbar spine, increased pain with straight leg raises bilaterally (worse on the right), and his sensation was intact in all extremities (Tr. p. 168). Dr. Dole prescribed a Medrol Dosepak, increased Smith's Vicodin to 10 mg., switched to Norflex 100 mg., and ordered EMG and NCS studies of Smith's lower extremities (Tr. p. 169). Dr. Dole continued to treat Smith for pain, and noted he developed left foot drop with decreased motor strength in the tibialis anterior and an antalgic gait (Tr. pp. 146-153), and in September 2008 again found Smith had low back pain with radiculopathy, stated that he appeared to be a good surgical candidate, and prescribed Vicodin, MS Contin (morphine oral), Flexeril, Zanaflex, and Mobic (Tr. p. 177).

On December 19, 2008, Smith was treated for back pain at a Huey P. Long clinic, and prescribed Lyrica, Mobic, and Robaxin (Tr. p. 203).

In January 2009, Dr. Thomas Dansby, a general practice doctor, examined Smith for complaints of neck and low back pain, found a decreased range of motion in his cervical and lumbar spine, and diagnosed lumbar and cervical sprain (Tr. p. 195). In November 2009, Dr. Dansby examined Smith for pain in his neck, head, back, and legs (Tr. pp. 192-193). Dr. Dansby prescribed physical therapy, Flexeril, and Arcet (Tr. p. 192). Smith had follow-up visits in December 2009 and January through February 2010, and was maintained on Lorcet, Neurontin, and Robaxin as well as given Decadron injections (Tr. pp. 181-184, 189-191). In February 2010,

7

Smith was told he was taking too many Lorcet pain pills and was denied an early refill (Tr. p. 181); in March 2010 his prescription was changed to Ultram (Tr. p. 181).

On June 10, 2009, Smith was examined in a Huey P. Long Hospital clinic for chronic back and leg pain; he was diagnosed with high blood pressure, tobacco addiction, low back pain with radicular pain, obesity, and high cholesterol (Tr. p. 202). Smith was told to lose weight and quit using tobacco, and was prescribed Neurontin and Prozac (Tr. p. 202). Smith was seen in the clinic again in November 2009, diagnosed with chronic back pain and depression, and was continued on his Neurontin (Tr. p. 201).

In July through September 2009, Smith went to the E.A. Conway Orthopedic Clinic for his back and knee pain (Tr. pp. 258-261). Smith was found to have positive straight leg raising bilaterally, laxity in his left knee, and generalized tenderness in both knees (Tr. p. 260). He was prescribed Depo Medrol, Nubain, and Phenergan in July (Tr. pp. 261, 274) and was referred to the pain management clinic in September (Tr. p. 258, 272). An MRI showed degenerative changes with minimal grade I spondylolisthesis on L5, mild neuroforaminal stenosis, and no significant nerve root compression; x-rays of his knees showed mild degenerative changes (Tr. pp. 258, 268-270, 272-73, 281-83). An EMG/nerve conduction study was normal (Tr. pp. 267, 280). Smith was given a Kenalog injection (Tr. p. 258, 272).

An MRI of the lumbar spine on February 9, 2010 showed broad based disc protrusion at L4-5 and L5-S1 with moderate spinal

stenosis at L4-5 and moderate to high grade spinal stenosis at L5-S1, with no significant foraminal narrowing (Tr. p. 196). An MRI of the cervical spine showed shallow C3-4 right paracentral disc protrusion causing mild right lateral recess narrowing without significant spinal stenosis (Tr. p. 197).

On February 23, 2010, Smith's back pain was evaluated by Dr. Timothy D. Spires, an orthopaedic surgeon, at the North Louisiana Orthopaedic and Sports Medicine Clinic (Tr. p. 243). Dr. Spires found that Smith's cervical spine had a "pretty reasonable range of motion," 5/5 strength in both arms, midline back tenderness around the mid-lumbar level, 5/5 strength in both legs, intact sensation, and no pain but some low back spasms during straight leg raises (Tr. pp. 243-244). An MRI of the cervical spine showed a light disc bulge at C3, C4 with no significant neural or thecal sac compression, and moderate to severe stenosis at L4-L5, L5-S1 with significant loss of disc height at both involved discs(Tr. p. 244). Smith was diagnosed with cervicalgia following the car accident, without significant neurologic or radiographic findings, a potential whiplash-type injury, and chronic low back pain that had been waxing and waning since 2000 and was exacerbated by the accident (Tr. p. 244). Dr. Spires prescribed Celebrex, physical therapy, and exercises for both his lumbar and cervical spines (Tr. p. 245).

Smith began physical therapy and occupational therapy at LaSalle General Hospital in February 2010 (Tr. pp. 185-188). It was found that severe pain and decreased function required

therapeutic exercise, electrical stimulation, and hot/cold packs to decrease pain and increase range of motion and strength (Tr. pp. 186, 187).

In April 2010, Dr. Spires found Smith had moderate to severe stenosis at L4-5 and L5-S1, so he stressed stretching and exercises for core strengthening and prescribed a little bit of pain medication (Arthrotec) (Tr. p. 294). Smith did physical therapy in June 2010 (Tr. pp. 296-298). In May 2010, Dr. Spires told Smith that he was not considering surgery yet and to continue to do his exercises consistently, and prescribed Meloxicam, Flexeril, and Lorcet (Tr. p. 303).

In June 2010, Dr. Dansby stated there had so far been inadequate response to conservative therapy and that surgery could be the next step if his stenosis-like symptoms continued (Tr. p. 306). Dr. Dansby further stated that Smith could not perform any level of work full time, including sedentary work, but could work up to fifteen hours a week at a "very sedentary" level, without any stooping (Tr. p. 306). Dr. Dansby noted that any amount of time spent sitting, standing or walking at work would have to be followed by an equal period of time spent laying or reclining (Tr. p. 306).

### 2. April 2010 Administrative Hearing

Smith testified at his administrative hearing that he was 31 years old and had a tenth grade education (Tr. p. 310). Smith testified that he had worked as a heavy equipment operator and done seasonal work operating tractors and working at the cotton gin

(operating the press) (Tr. p. 311). Smith also testified that he had worked as a cook at Sonic and Golden Corral, and as a prison guard for three months (Tr. pp. 333-334). Smith testified that he can read and write "pretty well" (Tr. p. 337).

Smith testified that he hurt his back originally on about September 28, 2000, rupturing two discs, which caused problems with his right leg (Tr. p. 312). After Smith went off worker's compensation, he returned to work, but his back pain worsened and began interfering with his left leg functioning (Tr. p. 312). Smith testified that he also has arthritis in his knees and back, spinal stenosis, and bone spurs (Tr. p. 312). Smith was laid off work and had a slip and fall about three days later which aggravated his back, and he was in a car accident in December 2007 which also worsened his back condition and made his left leg hurt much worse (Tr. pp. 312-314).

Smith testified that, after the car accident in 2007, he began taking more pain medication because it only lasted four to five hours and he was not able to sleep, although his general practice doctor, Dr. Turnley, told him he should not take more than three per day (Tr. p. 315). Smith also testified that Dr. Turnley told him to lose weight in 2008 (Tr. pp. 315-316). Smith testified that he had weighed almost 400 pounds in 2004; he was 6'3" tall and weighed 297 pounds at the time of the hearing (Tr. p. 316). Smith admitted he needs to lose more weight, so he walks two or three days a week (Tr. pp. 316-317). Smith explained that he asked for stronger Oxycontin in 2008 because he thought his morphine was too

11

strong and hoped it could be replaced with a stronger dose of Oxycontin (Tr. p. 317).

Smith testified he began suffering from left foot drop in about 2008, and now has it in both feet (Tr. pp. 317-318).

Smith was in a second vehicle accident in 2009 which caused him to start having neck pain (Tr. pp. 318-319). Smith testified that physical therapy had eased his neck and shoulder pain, so it was just "light" and he could deal with it (Tr. p. 319). Smith testified that his primary problems were his back, legs, and knees, which prevent him from getting out of bed two to four days a week (Tr. pp. 319-320). Smith testified he had just started taking a new medicine for arthritis that Dr. Spires had prescribed, but he believed back surgery would be beneficial and would help him get back to work (Tr. p. 320). Smith testified that his decision to have back surgery was being delayed by his attorney (Morris Bart) (Tr. pp. 320-321).

Smith testified that he lives with his wife and daughter, and that he drives his daughter to school if he is able (Tr. p. 321). Smith testified that his wife works (Tr. p. 321). Smith testified that, on a good day, he washes dishes, helps with the household chores such as laundry, sweeping, mopping, mowing (mostly with a riding mower), and washing his car (Tr. pp. 322, 326). Smith testified that he is not able to lift his five-year-old daughter (Tr. p. 322), but he can occasionally lift 20 pounds comfortably (Tr. p. 323). Smith testified that he drives, but has a problem with his toes getting numb and his knees and left leg hurting (Tr.

p. 323).  Smith testified that he has gone grocery shopping alone and put gas in the car by himself, and that he can push a grocery cart for about 30 minutes to an hour (Tr. pp. 323-324).  However, once or twice a month he needs to use a cane to walk (Tr. p. 324). Smith testified that he really enjoyed his prior work as a heavy equipment operator, and hopes he can learn a new trade and return to work after his back surgery (Tr. pp. 325-327).

Smith also testified that his medications do not completely eliminate his pain, but reduce it to an acceptable level of 6 or 7 out of 10 (Tr. p. 324).  Smith testified that his medication makes him a little drowsy, but it does not noticeably interfere with his concentration (Tr. p. 325).  Smith testified that it takes 25 to 30 minutes for his pain medication to take effect and it lasts three or four hours (Tr. p. 329).  Smith testified that he takes Lorcet Plus for pain, Neurontin for nerve pain, and he uses a TENS unit (about three times a week), as well as heating pads and cold compresses (about three times a week); he cannot afford Celebrex (Tr. pp. 329-331).  Smith testified that he cannot work because he is not able to get out of bed about three days a week (Tr. pp. 331-332).  On those days, Smith sits or reclines most of the day (Tr. p. 332).

The VE testified that Smith's past work as a fast food cook was medium level work, his past work as a cotton gin press operator was medium level work, and his work as a heavy equipment operator was medium level work (Tr. p. 335).  The VE testified that Smith does not have any transferrable work skills (Tr. p. 336).

13

The ALJ posed a hypothetical which assumed a person limited to light work with an option to sit or stand (change position) briefly every hour (Tr. pp. 335-336).  The VE testified that such a person could not do any of Smith's past work.  The VE further testified that such a person, with Smith's educational level, could work as a security guard or a gate guard (SRC[2] 33-9032, 1,032,260 jobs nationally, 17,100 jobs in Louisiana), or as a file clerk (SRC 43-4071, 214,590 jobs nationally, 2310 in Louisiana).  However, the VE added that Smith may not be hired as a file clerk because he does not have a GED (Tr. pp. 336-337).

The ALJ posed a second hypothetical involving a person who can perform only sedentary level work (Tr. pp. 337-338).  The VE testified that such a person could work as an ampoule sealer in the pharmaceutical industry (DOT 559.687-014), or a buffing turner and counter in the textile leather industry (DOT 798.687-9022) (Tr. pp. 338-339).

The third hypothetical involved a person whose severe pain makes him have trouble getting out of bed three or four days a week (Tr. p. 339).  The VE testified that such a person could not perform any work (Tr. p. 339).

At the close of the hearing, Smith's attorney argued that he meets or equals Listing 1.04(A) (Tr. pp. 340-341).

### ALJ's Findings

To determine disability, the ALJ applied the sequential

---

[2] What "SRC" stands for is not clarified in the administrative record, nor has it been identified through legal research.

14

process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Smith (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Smith has not engaged in substantial gainful activity since November 21, 2007, his disability insured status expired on December 31, 2009, and he has severe impairments of degenerative disc disease of the lumbar spine, cervicalgia, and obesity, but he does not have an impairment

15

or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 18). The ALJ also found that Smith has no past relevant work[3] (Tr. p. 21).

At Step No. 5 of the sequential process, the ALJ further found that Smith has the residual functional capacity to perform the full range of sedentary work (Tr. p. 21). The ALJ found that the claimant is a younger individual with a limited education and transferability of work skills was not an issue (Tr. pp. 21). The ALJ concluded that a finding of "not disabled" was directed by the Medical-Vocational Guidelines, Rule 201.24, through the date Smith was last insured, on December 31, 2009 (Tr. p22).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not

---

[3] Past relevant work is work a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1).

16

involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Issues 1 & 2 - Last Date of Disability Insured Status

First, Smith contends the ALJ's error in finding Smith's insured status expired in 2009 influenced his view as to which evidence was relevant to the adjudication of the claim, and resulted in prejudice to the claimant. Smith contends that remand

17

is required for the ALJ to consider all of the evidence.   In conjunction with this issue, Smith also alleges the Appeals Council erred in declining to remand for consideration of the assessment of restrictions by the treating physician (Dr. Dansby) without providing good reasons to reject his opinion as required by 20 C.F.R. Section 404.1527(d), and the opinion was improperly rejected without good cause.

As argued by Smith, the Appeals Council found the ALJ erred in stating Smith's disability insured status expired on December 31, 2009, and that it actually expired on December 31, 2010.   The Appeals Council then concluded the error was harmless.   Smith argues it was not harmless error since the ALJ failed to consider the medical evidence through December 31, 2010, including Dr. Dansby's 2010 evaluation.

Smith is correct in his assertion that the ALJ failed to consider any of the medical evidence after the February 10, 2010 MRI.   Therefore, he did not consider either Dr. Spires' or Dr. Dansby's 2010 medical records.   More to the point, the ALJ did not consider Smith's medical condition as of December 31, 2010, and erroneously stated in his opinion that "[t]he treating doctors did not provide medical opinions regarding the effects of the claimant's impairments upon his abilities to perform work activities."   In fact, such an evaluation was provided by Dr. Dansby in June 2010.  Instead, the ALJ relied on a 2007 statement by Dr. Turnley, which predated both Smith's second car accident and the alleged disability onset date, to find Smith's complaints of

pain were not credible (Tr. pp. 19-20); Dr. Turnley's 2007 evaluation was not relevant to Smith's medical condition in 2010, after the second accident.

On February 23, 2010, Dr. Timothy D. Spires at the North Louisiana Orthopaedic and Sports Medicine Clinic found that Smith had a "pretty reasonable range of motion," 5/5 strength in both arms, midline back tenderness around the mid-lumbar level, 5/5 strength in both legs, intact sensation, and no pain but some low back spasms during straight leg raises (Tr. p. 244). An MRI of the cervical spine showed a light disc bulge at C3, C4 with no significant neural or thecal sac compression, and moderate to severe stenosis at L4-L5, L5-S1 with significant loss of disc height (Tr. p. 244). Smith was diagnosed with cervicalgia after a car wreck without significant neurologic or radiographic findings, and a potential whiplash-type injury, chronic low back pain that had been waxing and waning since 2000 and was exacerbated by the accident (Tr. p. 244). Smith began physical therapy and occupational therapy at LaSalle General Hospital in February 2010 (Tr. pp. 185-188). In April 2010, Dr. Spires found Smith had moderate to severe stenosis at L4-5 and L5-S1, so he stressed that Smith do stretching and exercises for core strengthening and prescribed a little bit of pain medication (Arthrotec) (Tr. p. 294). In May 2010, Dr. Spires told Smith that he was not considering surgery yet, to continue to do his exercises consistently, and prescribed Meloxicam, Flexeril, and Lorcet (Tr. p. 303).

In June 2010, Dr. Dansby stated there had so far been inadequate response to conservative therapy and that surgery could be the next step if his stenosis-like symptoms continued (Tr. p. 306). Dr. Dansby further stated that Smith could not perform any level of work, including sedentary, full time, but could work up to fifteen hours a week at a "very sedentary" level with no stooping (Tr. p. 306). Dr. Dansby also stated that any amount of time spent sitting, standing or walking at work would have to be followed by an equal period of time spent laying or reclining (Tr. p. 306).

Dr. Spires' records make it clear that Smith had not recovered from his second accident and was symptomatic. Moreover, The physical limitations imposed by Dr. Dansby in June 2010 showed that Smith could not do the full range of sedentary work due to the fact that he could not sit most of the day on a full time work schedule. This evidence contradicts the ALJ's finding that Smith can perform the full range of sedentary work and that his complaints of pain were not fully credible.

Since the ALJ erred in failing to consider all relevant medical evidence and in failing to consider Smith's physical limitations as of December 31, 2010, rather than as of December 31, 2009, substantial evidence does not support the findings of the ALJ/Commissioner. Smith's case should be remanded for consideration of the relevant medical evidence through December 31, 2010.

Issue No. 2 - Listing 1.04

Next, Smith argues the ALJ failed to discuss why he did not

20

find Smith meets the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  Smith's attorney argued, at the close of the administrative hearing, that Smith meets or equals Listing 1.04.[4]

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled.  Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987).  Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).  A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990).  See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990).  For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 110 S. Ct. at 891.

A claimant has the burden of proving that his condition meets

_____

[4] Smith argues that he meets or equals Listing 1.04, which states in pertinent part:
1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
    A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine);... .

or equals an impairment listed in Appendix 1.  Sullivan v. Zebley,
493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990).
Also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990).
Where the impairment is severe, the Commissioner must determine
whether the impairment is so severe that the claimant will be
presumed to be disabled.  This determination is made by comparing
the impairment to a specific Listing of Impairments in the SSA
regulations.  See 20 C.F.R. § 404, Subpart P, Appendix 1.  If the
claimant's condition is listed, or is medically equivalent to a
listed impairment, the claimant is conclusively determined
disabled.  Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987).
Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).
The ALJ should identify the listed impairment for which the
claimant's symptoms fail to qualify and provide an explanation as
to how he/she reached the conclusion that the claimant's symptoms
are insufficiently severe to meet any listed impairment.  A bare
and summary conclusion that a plaintiff does not meet the criteria
of any listing is beyond meaningful judicial review.  Audler v.
Astrue, 501 F.3d 446, 448 (5th Cir. 2007), and cases cited therein.

     Smith is again correct; the ALJ stated inaccurately that Smith
had not argued that he meets a listing, and then made a summary
statement that Smith does not meet or equal any of the listings in
Appendix 1 (Tr. p. 18).  Since the ALJ failed to provide any
reasoning for his conclusion that Smith does not meet Listing 1.04,
there is nothing for this court to review.

     Therefore, this case should be remanded for adequate

consideration of whether Smith meets or equals a listed impairment in Appendix 1 under *all of the relevant medical evidence* through the correct disability insured status termination date of December 31, 2010.

Issue 3 - Medical-Vocational Guidelines

Smith contends the ALJ inappropriately relied on the Medical-Vocational Guidelines in determining he was not disabled in light of the uncontradicted non-exertional impairments assessed by the agency physicians.  Smith argues the error is not harmless because the vocational expert's testimony does not carry the Commissioner's burden of proof at the final step in the sequential evaluation process; the agency physician found Smith has nonexertional impairments and the VE's testimony does not support reliance on the grids.  The ALJ concluded that Smith could perform the full range of sedentary work and that a finding of not disabled was directed by Rule 201.24 of Table 1, Appendix 2.

When the ALJ found that Smith could not return to his past relevant work, the burden shifted to the Commissioner to show that Smith can perform other work in the national economy.  Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).  The law provides that the Commissioner can meet that burden if he can prove that Smith's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") that directs a conclusion that the claimant is not disabled.  Sec. 200.00(a) of Appendix 2 states this as follows:

> "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."

The U.S. Supreme Court has upheld the use of these Guidelines by the Commissioner in lieu of calling a vocational expert to testify. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Also, Harrell v. Bowen, 862 F.2d 471, 478 (5th Cir. 1988).

Smith argues the ALJ erred in relying on the grids because an agency physician found Smith's ability to do light work was compromised by the restriction of no more than occasional stair climbing. However, the ALJ found Smith could do only sedentary work, not light work. Therefore, this argument is meritless.

Smith also argues the VE did not provide any proof that there are sedentary job for Smith because he testified that the Dictionary of Occupational Titles is 19 years old and a lot of the unskilled sedentary jobs listed in it no longer exist (Tr. p. 33). Smith also argues that, although the VE found the Smith could do sedentary work as an ampoule sealer or buffing turner and counter in the textile leather industry,[5] the ALJ failed to take into account the 2010 medical report by Dr. Dansby which stated Smith cannot do sedentary work on a full time basis. However, the ALJ did not rely on the VE's testimony and instead used the Medical-

---

[5] It is noted that the VE did not state the numbers of jobs, for ampoule sealer in the pharmaceutical industry or buffing turner and counter in the textile leather industry, existing in the national or regional economies (Tr. pp. 338-339).

Vocational Guidelines to conclude that Smith is not disabled. In any event, Smith correctly states that the ALJ did not consider all of the relevant medical evidence in assessing his residual functional capacity to work.

Since the ALJ failed to consider all of the relevant medical evidence in determining Smith's residual functional capacity, substantial evidence does not support his finding that Smith can perform the full range of sedentary work and is not disabled. Therefore, Smith's case should be remanded to further consideration of whether there is any work he can do in light of his true impairments, as determined after consideration of all of the relevant medical evidence.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be REVERSED and that Smith's case be REMANDED to the Commissioner for further proceedings consistent with the views expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

25

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this __31st__ day of October, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE